**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Scott E. Knox,

    Plaintiff,

    v.                                       Case No. 1:08cv577

City of Blue Ash, *et al.*,              Judge Michael R. Barrett

    Defendants.

## ORDER

This case is now before this Court on Defendants' Motion to Dismiss (Doc. 5); Plaintiff's Response in Opposition (Doc. 8) and Defendants' Reply (Doc. 9). Also before the Court are Plaintiff's Notice of Supplemental Authority (Doc. 12); Defendants' Notice of Supplemental Authority (Doc. 13) and Plaintiff's Response to Defendant's Notice of Supplemental Authority (Doc. 14).

**I.    BACKGROUND**

Plaintiff Scott E. Knox, administrator of Decedent Charles Wayne Bennett's estate,[1] filed a complaint against the City of Blue Ash and Officer Scott Noel alleging a violation of 42 U.S.C. § 1983 and a state law claim of wrongful death.

Plaintiff's claims arise out of a high speed police chase that resulted in the death of Charles Wayne Bennett. On August 28, 2007 at approximately 12:21 a.m., Bennett was driving a black Monte Carlo and his friend, Daryl Lee Black, was riding in the passenger seat. (Compl. ¶ 7, 9). Bennett made a U-turn. (Compl. ¶ 8-9). Defendant Noel recorded

---

[1] Plaintiff Scott E. Knox is an attorney who has been appointed by the Hamilton County Probate Court as Special Administrator of the estate of Charles Wayne Bennett. (Compl. ¶ 3).

the U-turn on the cruiser video camera. (Compl. ¶ 10). Noel then commenced pursuit of the vehicle at a high rate of speed, communicating over the dispatch radio that he "just had a vehicle try to ram [him.] (Compl. ¶ 13). Defendant Noel also stated that Bennett "tried to ram [him] three times" and that he was "going to take this guy out if [he got] a chance." (Compl. ¶ 21, 24). Relying on these allegedly false statements, the officer in command, Officer Hartinger, agreed that Noel should "take him out." (Compl. ¶ 24). Upon hearing Defendant Noel's communications, other Blue Ash officers joined in the pursuit. (Compl. ¶ 25-6). When Bennett's car was finally stopped, one of the Blue Ash officers opened fire on the car, shooting Bennett, who was unarmed, six times. (Compl. ¶ 27). Bennett subsequently died as a result of the shooting, while Black was not hit by any of the bullets. (Compl. ¶ 28).

In the Complaint, Plaintiff claims Defendants violated Bennett's Fourteenth Amendment right to due process of law and Fourth Amendement right to be free from unreasonable search and seizure in violation of 42 U.S.C. § 1983. Plaintiff also brings a claim of wrongful death under Ohio Revised Code § 2125.02. In their Motion to Dismiss, Defendants argue that Plaintiff's constitutional claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants argue that because Plaintiff's section 1983 claims lack merit, Plaintiff's state law claim for wrongful death should be dismissed also.

## II. ANALYSIS

### A. Motion to Dismiss Standard

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and

draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), *quoting Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). Although the plausibility standard is not equivalent to a " 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949, *quoting Twombly*, 550 U.S. at 556.

### B. Section 1983

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Therefore, a plaintiff must allege two elements to establish a *prima facie* case under section 1983: (1) that the action occurred "under color of law"; and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). The parties do not dispute that the actions taken by Defendants were "under color of law." Instead, the parties disagree whether Plaintiff has sufficiently alleged a constitutional violation.

## C. Qualified immunity

Under the doctrine of qualified immunity, government officials performing discretionary functions will not incur liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The purpose of the doctrine "is to allow public officials to perform important government functions free from the debilitating effects of excessive litigation." *Bartell v. Lohiser,* 215 F.3d 550, 556 (6th Cir. 2000).

Qualified immunity involves a two-step inquiry: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### 1. Fourth Amendment

Relying upon *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), Defendants argue that the Fourth Amendment is not implicated in the chase of a vehicle by a police officer. This Court, when presented with a motion to dismiss in the companion case brought by Plaintiff's passenger, Black, applied *Lewis*, and found that the facts of the case "potentially place it somewhere on the border between substantive due process and an unreasonable seizure." *Black v. City of Blue Ash*, 2009 WL 799063, *6 (S.D.Ohio Mar. 23, 2009) (slip op.). This Court was not convinced "at this early stage of the proceedings, it is appropriate to dismiss either of [Black's] alternative theories alleged in the Complaint." *Id.*

In *Lewis*, the Supreme Court explained that the Fourth Amendment covers only

"searches and seizures." 523 U.S. at 843. The Court explained further that under its jurisprudence, a police pursuit in attempting to seize a person does not amount to a seizure within the meaning of the Fourth Amendment. *Id.* at 844, *citing California v. Hodari D.*, 499 U.S. 621, 626 (1991). The Court continued:

> And in *Brower v. County of Inyo*, 489 U.S. 593, 596-597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989), we explained that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied." We illustrated the point by saying that no Fourth Amendment seizure would take place where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit," but accidentally stopped the suspect by crashing into him. *Id.*, at 597, 109 S.Ct., at 1381-1382.

*Id.* Accordingly, the Court found that the Fourth Amendment did not apply to a claim arising out of a high-speed chase that ended when a motorcycle tipped over and resulted in the death of the plaintiff, who was a passenger on the motorcycle. *Id.*

The facts alleged in this case are distinguishable from that of *Lewis* and the other instances where the Supreme Court has found that a seizure did not occur. Here, it is alleged that the police chase ended, and the car was stopped. The Court finds that based on these allegations, a seizure occurred within the meaning of the Fourth Amendment. There was both a show of authority, and submission to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991).

A claim against a police officer for the use of excessive force in the course of an arrest or other "seizure" is properly analyzed under the Fourth amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Court finds

that Plaintiff has sufficiently alleged a violation of this objective reasonableness standard. Plaintiff alleges that after the car Bennett was driving was stopped, the officers shot Bennett, who was unarmed, six times. *Accord Black*, 2009 WL 799063, at *7 ("It does not appear to this Court that the shooting of a suspect after a U-turn and a high speed chase, amounts to a reasonable use of force.").

While Plaintiff does not allege that Officer Noel was one of these officers, Plaintiff alleges that Officer Noel made false statements upon which his fellow police officers relied, and which caused the officers to join in the pursuit of the car and fire shots at Bennett. In *Floyd v. City of Detroit*, the Sixth Circuit explained that "a police officer who fails to act to prevent the use of excessive force may still be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" 518 F.3d 398 (6th Cir. 2008), *quoting Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997). Therefore, based on the allegations in the Complaint, the Court finds that the potential for liability extends to Noel.

Under the second prong of the qualified immunity analysis, the Court finds that it was clearly established that Officer Noel's conduct was a violation of Bennett's Fourth Amendment right to be free from unreasonable seizures. The Sixth Circuit has stated that a suspect's right to be free from the use of excessive force is clearly established. *Floyd*, 518 F.3d at 407. Therefore, the Court concludes that at this stage of the proceedings Officer Noel is not entitled to qualified immunity on Plaintiff's claim of excessive force under the Fourth Amendment.

## 2. Substantive Due Process

In *Lewis*, the Supreme Court explained that if a constitutional claim is covered by a specific constitutional provision, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." 523 U.S. at 843, *quoting United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997). Therefore, analysis of Plaintiff's claim under a substantive due process analysis is only appropriate if his claim is not covered by the Fourth Amendment. *Id.*

The Due Process Clause prohibits any state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In *Lewis*, the Supreme Court explained that "[t]he touchstone of due process is protection of the individual against arbitrary action of the government." 523 U.S. at 845, *quoting Wolf v. McDonnell*, 418 U.S. 539 558 (1974). The Court explained that "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Id.* at 846. Where the challenged government action is the conduct of a particular government employee or official, the question is whether the conduct "shocks the conscience." *Id.* The Court explained that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. *Id.* at 848. Instead, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849, *citing Daniels v. Williams*, 474 U.S. 327, 331 (1986). However, "the point of the conscience shocking" may be reached "when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness

or 'gross negligence.' " *Id.*, *citing Daniels*, 474 U.S. at 334 n.3.

In discussing what amount of fault satisfies the "shock the conscience" standard in the context of police high speed chases, the Court stated:

> [T]he police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance. . . . A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

*Id.* at 853 (internal quotation marks omitted). Therefore, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id. at 854. "[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836.

In the companion case brought by the passenger, this Court has already found that "[Black] has alleged that a police officer repeatedly and maliciously lied so as to engage the full force of his colleagues against Plaintiff. Such alleged actions shock the conscience of this Court as an arbitrary abuse of executive power, and fall within the scope of *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)." *Black*, 2009 WL 799063, at *7. Accordingly, Plaintiff has sufficiently alleged a substantive due process violation.

Under the second prong of the qualified immunity analysis, the Court finds that "[a]s of January 18, 2002, it was clearly established that a police officer's conduct during the

course of a high-speed pursuit could violate the substantive due process rights of persons injured during the pursuit." *Meals v. City of Memphis, Tenn*., 493 F.3d 720, 729 (6th Cir. 2007), *citing Lewis*, 523 U.S. at 845. Accordingly, at this stage of the proceedings Officer Noel is not entitled to qualified immunity on Plaintiff's substantive due process claim.

### C. Municipal Liability

A municipality cannot be held liable for an injury caused by its agents or employees pursuant to section 1983 based on a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable for a constitutional tort where the action occurred pursuant to an official municipal policy. *Id*. In order to hold the municipality liable, the municipal policy must be the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Either an affirmative policy or a policy of inaction can suffice to support municipal liability. *See Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir.1996).

Plaintiff alleges that the City failed to properly train or discipline Officer Noel. Plaintiff also alleges that the City ratified Noel's alleged use of deadly force.

#### 1. Failure to train

The Supreme Court has held that "the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The Supreme Court has identified at least two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999), *citing City of Canton, Ohio v. Harris*, 489 U.S.

378, 387 (1989). One is the failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. *Id.* For example, a lack of instruction in the use of firearms or in the use of deadly force could constitute "deliberate indifference." *Id.* A second type of situation justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers. *Id.*

Plaintiff alleges that the City was on notice of the obvious need to train and supervise Officer Noel due to prior incidents. Plaintiff alleges that Noel engaged in a pattern of reckless behavior. The Court finds that Plaintiff has stated a claim against the City based upon the failure to train.

### 2. **Ratification**

The Sixth Circuit has held that a failure to investigate complaints or discipline officers can give rise to section 1983 liability. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir.1989), *cert. denied*, 495 U.S. 932 (1990); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir.1985), *cert. denied*, 480 U.S. 916 (1987); *see also Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990). The theory underlying these cases is that the municipality's failure to investigate or discipline amounts to a "ratification" of the officer's conduct. *Dyer v. Casey*, 1995 WL 712765, *2 (6th Cir. 1995).

To the extent that Plaintiff's allegations regarding the City's "ratification" of Noel's conduct relate to a failure to investigate the incident on August 28, 2007, the Court finds that Plaintiff cannot logically show that this failure was the "moving force" behind the constitutional violation. However, to the extent that Plaintiff alleges that there were prior, un-investigated incidents in which Officer Noel used excessive force, those allegations can

be used to support Plaintiff's claim against the City. The Court finds that Plaintiff has stated a claim against the City based upon a failure to investigate or discipline.

## III. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 5) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                        */s/ Michael R. Barrett*
                                        Michael R. Barrett, Judge
                                        United States District Court